**Philippos PHILIPPOPOULOS,**
**Petitioner,**

v.

**Sophia PHILIPPOPOULOU, a/k/a**
**Sophia Page, Respondent.**

**No. CIV.A. 1:06–CV–1887T.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Nov. 2, 2006.

Michael Joseph Sullivan, Womble Carlyle Sandridge & Rice, Atlanta, GA, for Petitioner.

Michelle E. West–Osondu, Law Office of West–Osondu & Associates, LLC, Lilburn, GA, for Respondent.

### *ORDER*

BATTEN, District Judge.

This case involves a petition under the Hague Convention on the Civil Aspects of International Child Abduction (the "Hague Convention") and its implementing legislation, the International Child Abduction Remedies Act (the "ICARA"), 42 U.S.C. § 11601 *et seq.,* in which Petitioner seeks the return of his daughter, Athanassia Philippopoulou, to Greece. The case is before the Court for consideration of Respondent's affirmative defense that the petition should be dismissed because it was not timely filed.

### I. Background

Petitioner and Respondent were married on May 16, 1992, in Athens, Greece. Their daughter was born on October 21, 1997, in Athens, Greece.

On July 1, 2005, Respondent and the child left the family's home in Greece on a planned vacation to the United States to visit Respondent's family in Georgia. Petitioner and Respondent agreed that Respondent and the child would return to Greece on August 15, 2005.

On July 4, 2005, three days after departing Greece, Petitioner was served with an Extra–Judiciary Protest and Notice formally notifying him that Respondent intended to remain with the child in the United States and not return to Greece as she had previously agreed.

On November 1, 2005, Petitioner filed an application with the National Center for Missing and Exploited Children (the "NCMEC") for the return of the child to Greece. On November 7, 2005, the U.S. State Department sent Respondent a letter notifying her that Petitioner had filed a request for the child's return. On November 28, 2005, the NCMEC contacted Respondent's former counsel, who indicated that Respondent was willing to participate in a mediation to resolve the dispute.

On March 24, 2006, the mediation took place, but was unsuccessful.

In May 2006, pursuant to Petitioner's request, the NCMEC began a search for pro bono counsel for Petitioner in the United States. On July 18, 2006, Michael J. Sullivan agreed to represent Petitioner.

On August 11, 2006, Petitioner filed his petition in this Court for the return of his child.

### II. Discussion

Congress enacted ICARA to implement the Hague Convention, a treaty to which the United States and Greece are signatories. 42 U.S.C. § 11601(b)(1). The goals of the Hague Convention are "to secure the prompt return of children wrongfully removed to or retained in any Contracting State" and "to ensure that rights of custo-

dy and of access under the law of one Contracting State are effectively respected in other Contracting States." *Lops v. Lops*, 140 F.3d 927, 935 (11th Cir.1998) (citing the Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, art. 1, T.I.A.S. No. 11670, 19 I.L.M. 1501, 1501).

■ The underlying premise of the Hague Convention is that a child's country of habitual residence is the best place to decide issues relating to custody and access. Accordingly, a court considering a petition under the Hague Convention has jurisdiction over the wrongful removal or retention claim but not the underlying custody dispute.

■ To establish a prima facie case for wrongful retention under the Hague Convention, the petitioner must show by a preponderance of the evidence that (1) the habitual residence of the child immediately before the date of the alleged wrongful retention was in a foreign country; (2) the retention is in breach of custody rights under the foreign country's law; and (3) the petitioner was exercising custody rights at the time of the alleged wrongful retention. *Lops*, 140 F.3d at 936.

The Court finds that Petitioner has set forth a prima facie case of wrongful retention under the Hague Convention. It is undisputed that the child's habitual residence prior to visiting the United States was Greece. Furthermore, the evidence indicates that Petitioner had custody rights pursuant to Greek law and was exercising them at the time of the alleged wrongful retention.

Because Petitioner has satisfied his burden of establishing a prima facie case, the child must be returned to Greece unless

Respondent can establish that any of the Hague Convention's affirmative defenses apply. 42 U.S.C. § 11603(e)(2).

Article 12 of the Hague Convention mandates the return of a child who has been "wrongfully removed or retained in terms of Article 3 and, at the date of commencement of the proceedings before the judicial or administrative authority of the Contract state where the child is, a period of less than one year has elapsed." Even if more than one year has elapsed, the child shall be returned "unless it is demonstrated that the child is now settled in its new environment."

Respondent contends that the child should not be returned to Greece because the petition was filed more than one year after the wrongful retention of the child and the child is well-settled in her new environment.[1] It is Respondent's burden to establish this defense by a preponderance of the evidence.

Citing *In re Cabrera*, 323 F.Supp.2d 1303, 1303 (S.D.Fla.2004), Respondent argues that the retention of a child becomes wrongful as soon as the non-retaining parent becomes aware of the retaining parent's true intention not to return. She argues that Petitioner became aware of her true intention not to return on July 4, 2005, when he was served with the Extra–Judiciary Protest and Notice, over one year before he commenced this action on August 11, 2005.

Petitioner contends that his petition is timely because the wrongful retention did not begin until August 15, 2005, the date upon which Respondent failed to return to Greece as she had agreed. According to Petitioner, Respondent's retention of the child did not become wrongful—and thus

---

**1.** For purposes of this affirmative defense, Petitioner has stipulated that the child is now well-settled.

the one-year limitations period did not begin to run—until Respondent failed to return the child as she had agreed to do on August 15, 2005.

The Court agrees with Petitioner and finds that his petition was timely filed.

The *Cabrera* case upon which Respondent relies does not support her argument. In that case, the mother took the parties' child from Argentina to the United States in December 2001, ostensibly to visit the mother's sister and take the child to Walt Disney World. The father had consented to the trip with the understanding that the mother would return with the child in March 2002. In March 2002, the mother informed the father that the child would not be returning to Argentina *that month*—not that the child was *never* coming home. In January 2003, the mother told the father that she would return with the child, whom she had enrolled in school, when classes let out in June. The mother and child did not return that June, and the father filed his petition in March 2004.

The mother argued that more than one year elapsed between the allegedly wrongful retention and the date on which the petition was filed. She contended that the retention became wrongful in March of 2002 when she told the father that she did not intend to bring the child home that month, as originally agreed.

The court rejected this argument and concluded that the critical date for purposes of computing the twelve-month limitations period was the date upon which the father learned that his daughter was *never* going to return to Argentina—June 2003—the date upon which the mother had promised (in January 2003) but failed to bring the child home.

Thus, *Cabrera* actually supports Petitioner's argument because it held that the mother's retention of the child did not

become wrongful until the date upon which the mother had promised but failed to return the child to her home country. In this case, that date is August 15, 2005, not July 4, 2005.

The holding in *Cabrera* cited by Respondent—that the key date for limitations purposes is the date upon which the non-retaining parent learns of the retaining parent's intention to never return—is inapposite. This is because *Cabrera* did not involve a situation in which one parent removed a child, having represented an intent to return on a specific date, but then informed the other parent *before that specific date occurred* of an intention not to return. The Court doubts that under such facts the *Cabrera* court would have announced a rule to the effect that the critical date is always the date upon which the petitioner learns that the respondent intends to never return—even if the previously agreed upon date for the child's return has not yet passed.

■ The situation is somewhat analogous to the doctrine of anticipatory breach in contract cases. If one party to a contract anticipatorily repudiates the contract, the other party may bring an immediate action for a total breach or may wait to sue until after the repudiating party actually fails to perform as agreed. John D. Calamari and Joseph M. Perillo, *The Law of Contracts* § 12.8 (4th ed.1998). Although the non-breaching party can bring suit immediately upon the other party's anticipatory repudiation, the statute of limitations does not begin to run until the breach actually occurs (provided the non-breaching party does not place the repudiator in breach, but instead opts to await performance). *Franconia Assocs. v. U.S.*, 536 U.S. 129, 144, 122 S.Ct. 1993, 2002, 153 L.Ed.2d 132 (2002).

■ Similarly, under the Hague Convention a parent whose child is wrongfully

retained from its home country has one year from the date upon which the wrongful retention began to file suit for the child's return. While Petitioner probably could have filed suit immediately upon learning of Respondent's intention to wrongfully retain the child, Petitioner also had the right to wait to file suit until after the retention became wrongful. Because Respondent had agreed to return the parties' child to Greece on August 15, 2005, her retention of the child did not become wrongful until that date. Thus, Petitioner had until August 15, 2006, to file this action. Because he filed his petition before that date, Respondent has failed to carry her burden of showing that the petition should be dismissed for untimeliness.

 Even if the child's wrongful retention commenced on July 4, 2005, when Petitioner learned that Respondent did not intend to return to Greece, Respondent's affirmative defense could not be sustained at this time. At this point in the litigation, the Court essentially is considering Respondent's timeliness defense as if it were raised by way of a motion to dismiss. The standard for granting such a motion, of course, is very high. "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

Under the Hague Convention, even if the petition was not filed within twelve months of when the retention became wrongful and the child is well settled, the Court has the discretion to return the child to Greece. *See Antunez–Fernandes v. Connors–Fernandes*, 259 F.Supp.2d 800, 815 (N.D.Iowa 2003). Thus, it cannot be said that it appears beyond doubt that Petitioner can prove no set of facts that would entitle him to the grant of his petition. This is not to say that the Court has decided to exercise its discretion in this fashion, merely that Respondent has failed to show that even if July 4, 2005, were the relevant date, there is *no* set of facts under which the petition could be granted.

### III.  Conclusion

The Court finds that Respondent has not established the Article 12 defense of timeliness as a matter of law. Accordingly, the Court will not dismiss the petition at this time on the basis of that defense.